IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

KAREN RHODES,
P.O. Box 634
State College, PA 16804

    Plaintiff,                        Civil Action No.: V465600

v.

PARKLANE APARTMENTS, LLC
6807 Park Heights Avenue
Suite 100
Baltimore, MD 21215

FAIRFIELD RESIDENTIAL COMPANY, LLC
5510 Morehouse Drive
Suite 200
San Diego, CA 92121

    Defendants.

---

## AMENDED COMPLAINT[1]

Plaintiff Karen Rhodes, by and through her counsel Emejuru Law LLC, brings forth this action against Parklane Apartment, LLC and Fairfield Residential Company, LLC, and respectfully states as follows:

### JURISDICTION

1. Jurisdiction is proper pursuant to Section 1-501 and 6-102 of the Courts and Judicial Proceedings article of the Maryland Code Annotated, among other applicable provisions.

---

[1] This complaint is labeled "Amended Complaint," however, the filing of this amended complaint is primarily based on a filing error.

2. Plaintiff Karen Rhodes has properly exhausted her administrative remedies before the Maryland Commission Civil Rights and Montgomery County Office of Human Rights to bring forth claims of discrimination stated herein.

## VENUE

3. Venue is proper in this judicial district because this cause of action arose in this judicial district.

4. Defendant Parklane Apartments, LLC is located in this judicial district and does business in this judicial district.

5. Defendant Fairfield Residential Company, LLC is located in San Diego, California and does business in this judicial district.

## PARTIES

6. Plaintiff Karen Rhodes is a natural person and a resident of the state of Pennsylvania.

7. Fairfield Residential Company, LLC (hereinafter "Fairfield") owns and manages Parklane Apartments, LLC and regularly conducts and transacts business within the State of Maryland.

8. Parklane Apartments, LLC (hereinafter "Parklane") regularly conducts and transacts business within the State of Maryland.

## FACTUAL ALLEGATIONS

### Rhodes is Disabled and a Voucher Holder

9. Plaintiff Karen Rhodes is a former resident of the State of Maryland.

10. Rhodes began living in the Parklane Apartments residences located in Gaithersburg, Maryland in or about October 2002. She occupied a two-bedroom, one bath apartment in the Parklane apartment complex. She lived in the unit for approximately 16 years.

11. Parklane Apartment residences do not have one-bedroom apartment units. Defendants only have two-bedroom apartments, three-bedroom townhouses and four-bedroom townhouses.

12. In order to meet her rental payments, Rhodes qualified for a Housing Choice Voucher from the Montgomery County Maryland Housing Opportunities Commission ("HOC"). An HOC Housing Choice Voucher provides a "rent subsidy to clients so they can afford safe and quality affordable housing in Montgomery County."[2]

13. At all times stated herein, Rhodes was considered a one-person housing choice voucher holder and Defendants knew that she held a housing voucher. Defendants also knew that her only source of income was through Supplemental Security Income ("SSI") and Social Security Disability Income ("SSDI").

14. At all times herein, Defendants knew approximately how much Plaintiff earned through SSI and SSDI for each year that she maintained her tenancy.

*Rhodes Requested an Accommodation and Filed A Complaint of Discrimination*

15. In or about February 2015, Rhodes had lateral ankle ligament replacement surgery that required her to use a cane and wear air cast.

16. As a result of her disability, Mr. Rhodes requested to routinely stand outside of her apartment unit to wait for her routine pick-up rides.

17. Rhodes requested an accommodation in the form of allowing her to sit on the "retaining wall." However, on October 8, 2015, Rhodes was told by Defendants that she was not permitted to sit on the "retaining wall." Rhodes was told that it "looks bad" when people are sitting around on the premises.

---

[2] http://www.hocmc.org/rental-programs.html

3

18. In October 14, 2015, Rhodes was waiting for a medical ride to surgery at Johns Hopkins University Hospital in Baltimore, Maryland. Rhodes was told by Defendants that she could not sit on the wall to wait for her ride.

19. In March 2016, Rhodes was once again waiting for her ride to a doctor's appointment. Rhodes was screamed at by Defendants' property manager Nell Shaughney. Shaughney told Rhodes that she could not sit on the wall. Prior to Shaughney's employment with Defendants, Rhodes utilized the wall to sit and wait for her medical appointments for approximately 13 years.

20. In March 2016, Rhodes contacted the Montgomery County Housing Authority, Housing Opportunities Commission (HOC), and spoke with Rebecca Grayson. Grayson contacted Ms. Nell Shaughney, a representative property manager for Defendants' Parklane apartments.

21. In or around April 1, 2016, Grayson visited Rhodes at her home and they walked around the property together. Both composed a "letter of accommodation" and also attached medical documentation certifying her health condition. The medical documentation certified that she had severe back problems that substantially limited her ability to walk, stand, and lift.

22. On or about April 1, 2016, both Grayson and Rhodes submitted the letter to Parklane management. Shaughney received the letter requesting an accommodation.

23. In April 2016, shortly after submitting her accommodation request, Defendants submitted a request to HOC to increase Rhodes monthly rental payment to $865.00 per month to over $1400.00 per month. However, HOC denied the original request and allowed a rental increase to $1245.00 per month.

4

24. Rhodes believed that if her rent increased at all, her rent could only increase incrementally to approximately $875.00 per month given that the property was a Low Income Housing Tax Credit (LIHTC) property. The unit was further "rent restricted" and could not exceed 30 percent of the imputed income limitation, pursuant to 26 U.S.C. Section 42 and the Maryland Qualified Administrative Plan (QAP).

25. However, she was blindsided by Defendants when her rent skyrocketed by approximately 44.00%. Ms. Rhodes was never told in advance about the increase. As an HOC voucher recipient, this increase caused her to exceed her voucher payment standard of $1330.00.

26. This meant that her own personal expenditure, which was primarily based on her SSI and SSDI income, would increase from $0 to $122.00, despite no change in her income.[3] As a result, Ms. Rhodes had to use more of her limited disability income to pay for utilities, causing her to have diminished resources for food and personal items.

27. However, a similar unit next door to Rhodes, 8014-I, had only an incremental rent increase from approximately $1,243.00 per month to $1,245.00 per month for their renewed lease year. Defendants knew that the 8014-I unit maintained an income higher than Plaintiff's and were not voucher holders.

28. Other similarly situated residents who maintained HOC Vouchers, were charged higher rental increases than non-HOC Voucher Holders with the same units of size and rooms. As a result of the increase, those HOC Voucher holders were forced to move out of Defendants property. This was especially applicable to one-person voucher holders.

29. Rhodes complained to Defendants' Felicia Hatfield. Hatfield told Rhodes that "If you are so unhappy [at Parklane], we will let you out of your lease with no penalties."

---

[3] Prior to 2016, Plaintiff did pay any personnel expenditures through her SSI and SSDI for her rent and Defendants knew of this fact.

5

30. On August 31, 2016, Rhodes received official notice from HOC that her rent for her apartment at Parklane Apartments jumped from $865.00 per month to $1245.00 per month. With this increase, Rhodes rent, and utilities included, would increase to approximately $1332.00 per month.

31. In or around September 6, 2016, Rhodes was searching for places to live after the rent increase from Defendants. While on the internet, she saw similar unit listings at Parklane apartments beginning at "875.00 per month."

32. The official rent increase for Rhodes went into effect on or about October 2016.

33. Rhodes filed a federal housing discrimination complaint with the U.S. Department of Housing and Urban Development on December 2, 2016.

34. On December 12, 2016, through counsel, Rhodes further complained of discriminatory housing practices.

*Rhodes is Harassed and Retaliated Against in 2017*

35. On June 1, 2017, Defendants attempted to raise Rhodes rent from $1,245.00 per month to $1,394.00 per month. The increase represented greater than 10% annual rent raise permitted under Maryland law. The new rates continued to put additional strain on resources already capped through Rhodes' SSI and SSDI income.

36. After Rhodes complained of discriminatory leasing practices, Defendants lowered the proposed rental increase to a modest $1352.00 per month.

37. As a result of the discriminatory rental increases against voucher holders, some voucher holders were forced to move out of the Defendants' property.

38. Similarly situated non-voucher holders were issued bare minimum rent increases. Specifically, an identical unit and non-voucher holder in unit 8014-I, incurred a rental increase from between $1245.00 per month to $1270.00 per month.

39. Rhodes filed another Charge of Discrimination on December 22, 2107 alleging discrimination based on source of income pursuant to Montgomery County Code, Chapter 27, Article I, Section 27-12.

### *Rhodes is Harassed and Retaliated Against in 2018*

40. In October 2018, Defendants once again increased Plaintiff's rent from $1352.00 per month to $1485.00 per month. This increase caused her personal share of rent under the HOC calculation to go from $183.00 per month to $221.00 per month, while her disability income barely increased at all. As a result, Ms. Rhodes had to use more of her limited disability income to pay for utilities, causing her to have diminished resources for food and personal items.

41. Similarly situated non-voucher holders were issued bare minimum rent increases. Specifically, an identical unit, 7915-F, incurred a rental increase from $900.00 per month in 2017 to $960.00 per month in 2018. Defendants knew that 7915-F's income was higher than Plaintiff's.

42. Another similarly situated non-voucher holder who had an identical unit, 8014-I, incurred a rental increase from $1270.00 per month to between $1395.00 per month to $1399.00 per month.

43. As a result of the substantial rent increases, Rhodes was forced to move from her unit and relocate to neighboring state of Pennsylvania to find affordable housing and a unit suitable for her medical needs.

### PLAINTIFF'S CLAIMS

**Count 1 – Retaliation**
Fair Housing Act of 1968 – 42 U.S.C. § 3604
Maryland State Government Article, §20-702
Montgomery County Code, Chapter 27, Article I, Section 27-12

44. Plaintiff incorporates all paragraphs herein *seriatim*.

7

45. Defendant, by and through, its agents or supervisors, retaliated against Plaintiff after of her request of for reasonable accommodation and complaints of discrimination.

46. Plaintiff prays for judgment against Defendants for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

### Count 2 - Retaliatory Harassment
### Fair Housing Act of 1968 – 42 U.S.C. § 3604
### Maryland State Government Article, §20-702
### Montgomery County Code, Chapter 27, Article I, Section 27-12

47. Plaintiff incorporates all paragraphs herein *seriatim*.

48. Defendant, by and through, its agents or supervisors, unlawfully and continuously retaliated against Plaintiff because of her complaints of discrimination and request for accommodation.

49. Plaintiff prays for judgment against Defendants for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

### Count 3 – Discrimination
### Maryland State Government Article, §20-702
### Montgomery County Code, Chapter 27, Article I, Section 27-12

50. Plaintiff incorporates all paragraphs herein *seriatim*.

51. Defendant, by and through, its agents or supervisors, unlawfully discriminated against Plaintiff because of her income.

52. Plaintiff prays for judgment against Defendants for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

## PRAYER FOR RELIEF

Plaintiff prays that judgment, which exceeds $75,000.00, be entered against Defendants for all damages allowable (including statutory, actual, compensatory, nominal, and punitive) expenses, attorney's fees, and for such other and further relief as may be just and proper.

Dated this 18th day of April, 2019

By _____
Ikechukwu Emejuru
**Emejuru Law LLC**
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
Telephone: (240) 638 – 2786
Facsimile: 1-800-250-7923
iemejuru@emejurulaw.com