# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**KAREN RHODES,**

    **Plaintiff,**                                              Civil Action No.: 8:19-cv-01463-PX

v.

**FAIRFIELD RESIDENTIAL COMPANY, LLC**
**FAIRFIELD PARKLANE, L.P.**

    **Defendants.**

---

## SECOND AMENDED COMPLAINT[1]
---

Plaintiff Karen Rhodes, by and through her counsel Emejuru Law LLC, brings forth this action against Fairfield Parklane, L.P. and Fairfield Residential Company LLC (collectively "Fairfield"), and respectfully states as follows:

## **JURISDICTION**

1. Subject matter jurisdiction exists through diversity jurisdiction pursuant to 28.U.S.C. § 1332 and 1331 as this matter involves a federal question and this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

2. Plaintiff Karen Rhodes has properly exhausted her administrative remedies before the Maryland Commission Civil Rights and Montgomery County Office of Human Rights to bring forth claims of discrimination stated herein.

---

[1] Plaintiff refers to this complaint as the Second Amended Complaint despite only making one true substantive amendment to her allegations.

## VENUE

3. Venue is proper in this judicial district because this cause of action arose in this judicial district.

4. Defendant Fairfield Parklane, L.P. maintains its principal place of business in San Diego, California and does business in this judicial district.

5. Defendant Fairfield Residential Company, LLC maintains its principal place of business in San Diego, California and does business in this judicial district.

## PARTIES

6. Plaintiff Karen Rhodes is a natural person and a resident of the state of Pennsylvania.

7. Fairfield Residential Company, LLC owns and manages Fairfield Parklane, L.P., has incorporated Fairfield Parklane, L.P. in the state of Maryland, and regularly conducts and transacts business within the State of Maryland. Its principle place of business is in San Diego, California.

8. Fairfield Parklane, L.P. is a subsidiary of Fairfield Residential Company, LLC and regularly conducts and transacts business within the State of Maryland. Its principle place of business is in San Diego, California.

## FACTUAL ALLEGATIONS

### *Rhodes is Disabled and a Voucher Holder*

9. Plaintiff Karen Rhodes is a former resident of the State of Maryland.

10. Rhodes began living in a residence building named "Parklane Apartments" located in Gaithersburg, Maryland in or about October 2002.

11. Defendant Fairfield Residential Company owns, manages and incorporated its subsidiary Fairfield Parklane, L.P in the state of Maryland (hereinafter and collectively referenced and incorporated in this complaint as "Fairfield"). By and through Fairfield Parklane, L.P.,

Defendant Fairfield Residential collects payments or profits from residents renting from its apartment/townhomes.

12. Fairfield maintains the same corporate address or headquarters at 5510 Morehouse Drive, Suite 200, San Diego, California 92121 and maintain the same corporate officers.

13. Rhodes occupied a two-bedroom, one bath apartment within Fairfields' apartment/townhome complex. She lived in the unit for approximately 16 years.

14. Fairfield residences do not have one-bedroom apartment units. Fairfield only has two-bedroom apartments, three-bedroom townhouses and four-bedroom townhouses.

15. In order to meet her rental payments, Rhodes qualified for a Housing Choice Voucher from the Montgomery County Maryland Housing Opportunities Commission ("HOC"). An HOC Housing Choice Voucher provides a "rent subsidy to clients so they can afford safe and quality affordable housing in Montgomery County."[2]

16. At all times stated herein, Rhodes was considered a one-person housing choice voucher holder and Fairfield knew that she held a housing voucher. Fairfield also knew that her only source of income was through Supplemental Security Income ("SSI") and Social Security Disability Income ("SSDI").

17. At all times herein, Fairfield knew approximately how much Plaintiff earned through SSI and SSDI for each year that she maintained her tenancy.

**Rhodes Requested an Accommodation and Filed A Complaint of Discrimination**

18. In or about February 2015, Rhodes had lateral ankle ligament replacement surgery that required her to use a cane and wear air cast.

19. As a result of her disability, Mr. Rhodes requested to routinely stand outside of her apartment unit to wait for her routine pick-up rides.

---

[2] http://www.hocmc.org/rental-programs.html

20. Rhodes requested an accommodation in the form of allowing her to sit on the "retaining wall." However, on October 8, 2015, Rhodes was denied and told by Fairfield that she was not permitted to sit on the "retaining wall." Rhodes was told that it "looks bad" when people are sitting around on the premises.

21. In October 14, 2015, Rhodes was waiting for a medical ride to surgery at Johns Hopkins University Hospital in Baltimore, Maryland. Rhodes was told by Fairfield that she could not sit on the wall to wait for her ride.

22. In March 2016, Rhodes was once again waiting for her ride to a doctor's appointment. Rhodes was screamed at by Fairfields' property manager Nell Shaughney. Shaughney told Rhodes that she could not sit on the wall. Prior to Shaughney's employment with Fairfields, Rhodes utilized the wall to sit and wait for her medical appointments for approximately 13 years.

23. In March 2016, Rhodes contacted the Montgomery County Housing Authority, Housing Opportunities Commission (HOC), and spoke with Rebecca Grayson. Grayson contacted Ms. Nell Shaughney, a representative property manager for Fairfields' Parklane apartments.

24. In or around April 1, 2016, Grayson visited Rhodes at her home and they walked around the property together. Both composed a "letter of accommodation" and also attached medical documentation certifying her health condition. The medical documentation certified that she had severe back problems that substantially limited her ability to walk, stand, and lift.

25. On or about April 1, 2016, both Grayson and Rhodes submitted the letter to Parklane management. Shaughney received the letter requesting an accommodation.

26. In April 2016, shortly after submitting her accommodation request, Fairfield retaliated against Rhodes and submitted a request to HOC to increase Rhodes monthly rental payment to $865.00 per month to over $1400.00 per month. However, HOC denied the original request and allowed the retaliatory rental increase to $1245.00 per month.

27. Rhodes believed that if her rent increased at all, her rent could only increase incrementally to approximately $875.00 per month given that the property was a Low Income Housing Tax Credit (LIHTC) property. The unit was further "rent restricted" and could not exceed 30 percent of the imputed income limitation, pursuant to 26 U.S.C. Section 42 and the Maryland Qualified Administrative Plan (QAP).

28. However, she was blindsided by Fairfield when her rent skyrocketed by approximately 44.00%. Ms. Rhodes was never told in advance about the increase. As an HOC voucher recipient, this increase caused her to exceed her voucher payment standard of $1330.00.

29. This meant that her own personal expenditure, which was primarily based on her SSI and SSDI income, would increase from $0 to $122.00, despite no change in her income.[3] As a result, Ms. Rhodes had to use more of her limited disability income to pay for utilities, causing her to have diminished resources for food and personal items.

30. However, a similar unit next door to Rhodes, 8014-I, had only an incremental rent increase from approximately $1,243.00 per month to $1,245.00 per month for their renewed lease year. Fairfield knew that the 8014-I unit maintained an income higher than Plaintiff's and were not voucher holders.

31. Other similarly situated residents who maintained HOC Vouchers, were charged higher rental increases than non-HOC Voucher Holders with the same units of size and rooms.

---

[3] Prior to 2016, Plaintiff did pay any personnel expenditures through her SSI and SSDI for her rent and Fairfield knew of this fact.

5

As a result of the increase, those HOC Voucher holders were forced to move out of Fairfield property. This was especially applicable to one-person voucher holders.

32. Rhodes complained to Fairfields' Felicia Hatfield. Hatfield told Rhodes that "If you are so unhappy [at Parklane], we will let you out of your lease with no penalties."

33. On August 31, 2016, Rhodes received official notice from HOC that her rent for her apartment at Parklane Apartments jumped from $865.00 per month to $1245.00 per month. With this increase, Rhodes rent, and utilities included, would increase to approximately $1332.00 per month.

34. In or around September 6, 2016, Rhodes was searching for places to live after the retaliatory rent increase from Fairfield. While on the internet, she saw similar unit listings at Parklane apartments beginning at "875.00 per month."

35. The official rent increase for Rhodes went into effect on or about October 2016.

36. Rhodes filed a federal housing discrimination complaint with the U.S. Department of Housing and Urban Development on December 2, 2016 against both Fairfield Residential, LLC and Fairfield Parklane, L.P.

37. On December 12, 2016, through counsel, Rhodes further complained of discriminatory housing practices.

### *Rhodes is Harassed and Retaliated Against in 2017*

38. On June 1, 2017, Fairfield retaliated again by raising Rhodes rent from $1,245.00 per month to $1,394.00 per month. The increase represented greater than 10% annual rent raise permitted under Maryland law. The new rates continued to put additional strain on resources already capped through Rhodes' SSI and SSDI income.

39. After Rhodes complained of discriminatory leasing practices, Fairfield lowered the proposed rental increase to a modest $1352.00 per month.

40. As a result of the discriminatory rental increases against voucher holders, some voucher holders were forced to move out of the Fairfields' property.

41. Similarly situated non-voucher holders were issued bare minimum rent increases. Specifically, an identical unit and non-voucher holder in unit 8014-I, incurred a rental increase from between $1245.00 per month to $1270.00 per month.

42. Rhodes filed another Charge of Discrimination on December 22, 2107 against Fairfield alleging discrimination based on source of income pursuant to Montgomery County Code, Chapter 27, Article I, Section 27-12.

### Rhodes is Harassed and Retaliated Against in 2018

43. In October 2018, Fairfield retaliated and once again increased Plaintiff's rent from $1352.00 per month to $1485.00 per month. This increase caused her personal share of rent under the HOC calculation to go from $183.00 per month to $221.00 per month, while her disability income barely increased at all. As a result, Ms. Rhodes had to use more of her limited disability income to pay for utilities, causing her to have diminished resources for food and personal items.

44. Similarly situated non-voucher holders were issued bare minimum rent increases. Specifically, an identical unit, 7915-F, incurred a rental increase from $900.00 per month in 2017 to $960.00 per month in 2018. Fairfield knew that 7915-F's income was higher than Plaintiff's.

45. Another similarly situated non-voucher holder who had an identical unit, 8014-I, incurred a rental increase from $1270.00 per month to between $1395.00 per month to $1399.00 per month.

46. As a result of the substantial rent increases, Rhodes was forced to move from her unit and relocate to neighboring state of Pennsylvania to find affordable housing and a unit suitable for her medical needs.

**PLAINTIFF'S CLAIMS**

**Count 1 – Retaliation**
**(Against both Fairfield Residential, LLC and Fairfield Parklane, L.P.)**
**Fair Housing Act of 1968 – 42 U.S.C. § 3617**
**Maryland State Government Article, §20-708**
**Montgomery County Code, Chapter 27, Article I, Section 27-12**

47. Plaintiff incorporates all paragraphs herein *seriatim*.

48. Defendants, by and through, its agents or supervisors, retaliated against Plaintiff after of her request of for reasonable accommodation and complaints of discrimination.

49. Plaintiff prays for judgment against Fairfield for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Count 2 – Hostile Environment Harassment[4]**
**(Against both Fairfield Residential, LLC and Fairfield Parklane, L.P.)**
**Fair Housing Act of 1968 – 42 U.S.C. § 3604, 24 CFR § 100.600**
**Maryland State Government Article, §20-702**
**Montgomery County Code, Chapter 27, Article I, Section 27-12**

---

[4] In 2016, HUD finalized regulations that provided formalized standards for analyzing FHA claims under hostile environment theories. https://www.nhlp.org/wp-content/uploads/2017/09/Quid-Pro-Quo-and-Hostile-Environment-Harassment-Rule-2016.pdf. Furthermore, The Fourth Circuit has recognized that sexual harassment is actionable under Title VII. *See Williams v. Poretsky Management, Inc.,* 955 F. Supp. 490, 496 (D. Md. 1996), citing *Katz v. Dole,* 709 F.2d 251, 254 (4th Cir. 1983). It also has recognized the shared purpose of Title VII and Title VIII to end discrimination. *See Betsey v. Turtle Creek Assocs,* 736 F.2d 983, 987 (4th Cir. 1984)("We and other courts of appeals have recognized the parallel objectives of Title VII and [Fair Housing Act]." *See also Pinchback v. Armistead Homes Corp.,* 90 F.2d 1447, 145` (4th Cir)("We do not consider novelty a bar to the application of [a] doctrine [previously employed in fair employment contexts to fair housing contexts]."

50. Plaintiff incorporates all paragraphs herein *seriatim*.

51. Defendants, by and through, its agents or supervisors, subjected Plaintiff to severe and pervasive conduct because of her complaints of discrimination and request for accommodation.

52. Plaintiff prays for judgment against Fairfield for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Count 3 – Discrimination**
**(Against both Fairfield Residential, LLC and Fairfield Parklane, L.P.)**
**Montgomery County Code, Chapter 27, Article I, Section 27-12**

53. Plaintiff incorporates all paragraphs herein *seriatim*.

54. Defendants, by and through, its agents or supervisors, unlawfully discriminated against Plaintiff because of her income.

55. Plaintiff prays for judgment against Fairfield for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**PRAYER FOR RELIEF**
**PLAINTIFF DEMANDS TRIAL BY JURY**

Plaintiff prays that judgment, which exceeds $75,000.00, be entered against all Defendants for all damages allowable (including statutory, actual, compensatory, nominal, and punitive) expenses, attorney's fees, and for such other and further relief as may be just and proper.

Dated this 28th day of June, 2019

                By  _/s/Ikechukwu Emejuru_
                Ikechukwu Emejuru
                **Emejuru Law LLC**
                8403 Colesville Road
                Suite 1100
                Silver Spring, MD 20910
                Telephone: (240) 638 – 2786
                Facsimile: 1-800-250-7923
                iemejuru@emejurulaw.com